The argument this morning is Baez-Sanchez v. Sessions. Mr. Roth. May it please the court, I'm Charles Roth for the petitioner. This court's well-reasoned decision in LDG v. Holder properly construed several statutory provisions in the course of addressing the legal question presented here, namely when and how and before whom an individual may seek a waiver of a U.N. non-immigrant, of indivisibility in the context of a U.N. non-immigrant visa. And the court concluded... Has any court of appeals other than Saturday considered the reasoning adopted by the BIA in Cannes? No court has yet considered that. I am aware that the issue has been briefed in some courts. I don't believe oral argument has yet occurred anywhere other than the Third Circuit on Sunday, which predated by a brief period the Board's decision in a matter of Cannes. Thank you. LDG was decided on statutory grounds. The first thing I want to note is that the Board's decision in a matter of Cannes actually doesn't dispute any of those statutory analyses. The Board casts some doubt on whether the general D-3 waiver is available in the U-Visa context, but this court's holding in LDG is seconded by the regulations, which themselves make it available, and the government expressly conceded in their briefing that it does... Let me just say what I understand, and you can tell me if you think there's something I'm missing. LDG seems to have assumed that all powers that the Attorney General possesses are also possessed by immigration judges. There was no holding to that effect in LDG. He just assumed that. The Board in Cannes says that's not true. There are powers possessed by the Attorney General, not possessed by immigration judges. And the Third Circuit in the Sunday case says it agrees with that view. Am I understanding correctly what the line-up of arguments is? I'm going to say yes. I think... I'm more confident, but yes. I think that's generally correct. Do we have to decide whether that's true, whether the assumption in LDG is a correct proposition of law? Well, I think... The Board of Immigration Appeals, in a sense, uses its interpretation of the regulations to avoid construing the statutes. The government... The second point of LDG... LDG finds that when D3 grants authority to the Attorney General, that that means the Attorney General still, as well as the newly created Department of Homeland Security. The government argues that's ambiguous. The Board assumes arguendo that LDG is correct, that the Attorney General maintains authority. That's exactly why I phrased my statement as it did. The Board assumes that the Attorney General has this power and its holding in con is that that power is exercised by district directors in the name of the Attorney General and not by immigration judges. Now, that may be right or it may be wrong, but it's not something that was actually reached in LDG. And Saturday... I keep saying Saturday. I have no idea why. Sunday... I'll get to Monday later. And Sunday says, yeah, that's true. These powers are held... These particular powers are held by the district directors and not by the IJs. Well, Sunday does some other things which neither the Board nor the government in its briefing actually agrees with. Sunday premises part of its analysis looking at the statute of D3 and it talks about... D3 references a person who's seeking admission. And the Third Circuit says, well, admission is defined at 1101A13 to meet a lawful entry after inspection. So it must mean that D3 waivers are limited to that... And that's just inconsistent with decades of BIA precedent, which says that when a person... When Congress lets somebody inside the U.S. move into a lawful status, that we treat them as if they're seeking admission. We deem them to be at the border, even though they're not. And... Sorry. Mr. Roth, I think I understand that point, which is well-developed in your brief. But it would be helpful in addressing the concern that Judge Easterbrook raised, which I also share, if you could in essence trace what you think is the path of delegation here from the Attorney General to immigration judges for purposes of D3. Well, we... I'm not sure whether this is an entire... The way that you want me to answer that question, and so if it's not, please stop me. We think that Kahn has a number of problems. I agree that Kahn has some problems. But at bottom, you still have to get from a statute that gives power to the Attorney General to delegate that power to the immigration judge before whom your client wants to appear to get relief. The government's briefing argues that when D3 talks about Attorney General that that might mean what was formerly the INS and which is now part of the Department of Homeland Security. The Board assumes arguendo to the contrary. The Board assumes arguendo that Attorney General still means at least what is currently in the Department of Justice, which is the Attorney General. Counsel, the delegation to the IJ is not in 1182 D3 1A 2. It's in some... If it's there, it's in some regulation. So I think my colleague is asking, and I'm certainly asking, for you to discuss 8 CFR 235 2D 1235 2D, the places where it's delegated, powers are delegated to immigration judges. Now maybe there are other places where powers are delegated to immigration judges. But I'm inclined to think we need to figure out where is the delegation? Is it there? And if so, why is it there in those regs? Or why is it, in your view, in some other reg? Yes, and I'm sorry if I was being long-winded in my explanation. The point is that the Board assumes that the Attorney General still has authority, as if General Sessions himself would be signing things on his desk. The regulations, Your Honor, generally provide that the immigration judges exercise the authority and are the delegates for the Attorney General. And the case law says there is a presumption that when the statute gives power to the Attorney General, that immigration judges exercise it. Did you, by any  Your Honor, that's what we're asking you to do. Well, the Board reasons from an absence. The Board says, look, the regulations We're asking you to reason from affirmative delegation language. Does it exist? Yes. 1003.10 says, for instance, that the immigration judges are the delegates of the Attorney General. The way we see it is the regulations generally delegate that authority to immigration judges. The case law seconds that. And where the Attorney General wants to take it away, where he wants to set up a different regime, then he can do that explicitly in regulation. The Board looks at it the other way around. The Board says, unless there is an explicit So that is your answer. You're not relying on any of the language in 235 or 1235. You're just relying on 1003.10? Well, Do you, by the way, quote the language you're relying on? You've got a standing request from the panel to talk about language. I don't have the language in my brain, but I will be happy to do so in rebuttal if I have that opportunity. What I would say is that the regulations that the Board cites have a laundry list of rules that govern various situations where a D-3 may be sought in health waivers for former communists, for people who are seeking crimes, and for people who are seeking admission to the United States. None of that language purports to be exclusive to say this is the only time when you can seek a D-3 waiver. And 235, Your Honor, governs parole. The main effect of that regulation is to say that the non-citizen doesn't have to repay the application fee when they renew their D-3 waiver in front of an immigration judge having been denied by the district director. None of that pardon me, this is obvious, but the regulations are from 1964 and 1997, both of them long predate the 2000 enactment of the U visa. So the Board's the sense that the Board has that these regulations are a guide to interpreting availability of the U visa seems to us inconsistent. And the Court's recent decision in Musonuru is, we think, illustrative of that. There, too, an agency interpreted the regulations as if the statute was entirely unchanged and this Court found that that's not a reasonable way to interpret regulations. You have to take into account a statutory change. Let me read to you what I believe is the text of the regulation you're relying upon. 1003.10a You got it? Yes, Your Honor. Okay. If you've got it in front of you, why don't you look at it and make that argument? Yes, it's actually in B. Immigration judges exercise the powers and duties delegated to them by the Attorney General through regulation in deciding individual cases and subject to the applicable governing standards. Immigration judges shall exercise independent judgment and discretion to take any action consistent with their authorities under the Act and regulations that is appropriate and necessary for the disposition. B refers to delegated to them by the Act and by the Attorney General through regulation. Take a look at A, which at least has some specific language. Immigration judges shall act as the Attorney General's delegates in the cases that come before them. Yes, Your Honor. Does that do the trick for you? Yes, Your Honor. There's more. The regulations are replete with the assumption and the presumption that immigration judges exercise the discretion of the Attorney General unless there's some specific rule to the contrary. 1003.10B doesn't say that. It says they exercise the powers delegated by regulation. And so that leaves us looking for a regulation that delegates a particular power. By the Act and regulation. There's nothing to delegate in the statute that delegates any power to immigration judges. Well. It delegates power to the Attorney General. So we need to get the power from the Attorney General to the immigration judge in some way. 1229A.A.3 says that the proceedings under this chapter, the sole and exclusive means of determining whether an alien may be admitted to the United States, that certainly takes us part of the way there. I'm not going to say that all this is entirely pellucid. It's certainly not. And part of it may come to whether you agree with me that there's a presumption that immigration judges exercise that authority or whether you want to look for some kind of explicit statement to that effect. I'm in my rebuttal time. I think I will reserve the remainder of my time. Certainly, Counsel. Mr. Tennyson. Good morning. May it please the Court. This is a straightforward Chevron case with two parts. I mean, the first question is whether there was discretion for the Board to construe the nonimmigrant waiver in the manner that it did. And second, whether it reasonably exercised that discretion. This Court's prior case in  which the Court recognized that the statutory scheme was ambiguous. The opinion also refers to the plain language of the statute, and Kahn seems to be based not on the statutes but on regulations. As to the first question, with regard to the plain language of the statute when the Court talks about it, it talks about it in the context of whether or not there's an exclusion from the general waiver for people who are seeking U visas as opposed to individuals who are seeking visas from outside the country or seeking T visas. And the Court said, looked at the exceptions language which was language having to do with particular grounds of inadmissibility that were accepted and said, well, it's not among those, so therefore, you can obtain a U visa. I mean, you can obtain the nonimmigrant waiver in the context of the U visa. It wasn't discussing so much whether or not the Attorney General had that authority. And so if you want to, if this Court wants to say that there is some portion of this that to which the plain language analysis does apply, it applies to that question of whether or not you can get a nonimmigrant waiver generally, either strictly before USCIS or before the Attorney General in USCIS in the context of an application for a U visa. I thought it was quite clear that the broader power in D3 is not limited by the Secretary of Homeland Security's power under D14. And let me go back to my concern about Kahn, which doesn't seem to actually take on the statutory language and yet somehow finds in regulations a prohibition or restriction on the Attorney General's power that is not in the statute itself because the Board prefers it that way. Right. I think that what the Board thought was that the statutory scheme was itself, that this Court left it open to them to construe the statutory scheme in this regard. Well, that's what the Board thought. Right. The question is whether that's what we meant. And I guess let me ask it again. Can you interpret Kahn, show me how Kahn is a statutory interpretation question as opposed to we've written, or rather the AG and the DHS Secretary have written some regs and we prefer to do it this way and limit the power that was granted in D3. Right. So clearly the Board in this case very much strongly relied on the regulations in coming to its decision. I think it took it for granted that this Court left open the statutory question. Having done that, it looked at the regs and I think it did feel very strongly compelled by the regs and particularly on the one hand the fact that say 1212.4 B did not, you know, provided a specific path by which one of these waivers could be obtained as well as 1235 D as well. And that given that there was a specific path given in the regulation for how you obtain this waiver. That is, you came to the Port of Entry, you sought the waiver before the District Director, and then once you were placed into exclusion proceedings, you then renewed that waiver before an Immigration Judge. That was the only delegation. And then from that and then given sort of the background principle that authority given to the Attorney General, if the Immigration Judge is to exercise it, has to be delegated by the Attorney General and even under, I guess what, 10310. What regulation does delegate powers to Immigration Judges? The regulations the Board principally relied on are delegations to District Directors. That is correct. And the Board observed, I think with substantial support, that Immigration Judges are not District Directors. But I have for you the same question that I had for Mr. Roth, which is, where do we go to find what powers are delegated to Immigration Judges? You look at the regulations, generally. Unless the statute expresses... There are a lot of regulations. I was hoping, perhaps, that the lawyers who are specialists in Immigration Law might tell me which regulations to look for. Right. The regulation that you look for to determine whether or not there is a delegation in this case is going to be either 1212.4, which delegates to the Attorney General in a certain context, and 1235, which also provides for renewal before the Special Inquiry Officer, who is also an Immigration Judge. But those... Insofar as we're talking about Attorney General delegations saying, not me, not now, there aren't any. If that's what you were looking for... Could you tell me what regulations do delegate powers to Immigration Judges? There are regulations that delegate, for example, general authority to conduct removal proceedings. Yes. Are there any substantive delegations to Immigration Judges? I would say that the delegation at 1212.4 is a specific delegation to the Immigration Judge in a particular context. What about 1003.10a? Is this general... Right. That is the general delegation to conduct removal proceedings. And with the Attorney General's powers? With the Attorney General's powers. Why isn't that enough? Well, because for one thing, this particular waiver doesn't do anything for your removal proceedings. If he gets the waiver, he's still removable. In fact, the petitioner in this case has an order of removal. Let me try to get at this problem a little bit differently. What do you see as the statutory ambiguity that authorized the Board to depart from LDG? Right. I think the Board itself, looking there, first looked at the term Attorney General and said, well, we're given the authority to... the Attorney General is given the authority to delegate that. That's a delegation to the Attorney General to make that delegation. Beyond that... Okay, well, and maybe 1003.10a or some other provisions actually answer that quite differently. What other statutory ambiguities do you see that the Board... that authorized the Board to depart from LDG? Well, given that the Court sort of assumed the Attorney General met the Attorney General, if you look at sort of the statutory history post 2003, at, for example, the Homeland Security Act, which broke up the authority. Sorry, point me to some language in the statute that you think is ambiguous. That says that... that would say that the Attorney that this is not clear. 6 U.S.C. 557. It's a reference provision in the Homeland Security Act, which says that these particular powers, which were delegated, which were taken out of INS and given to the... who was it? The Commissioner for USCIS. And these powers are listed at 6 U.S.C. 271. Sorry, what's the statute? 6 U.S.C. 271. This was the transfer of authorities to the Commissioner of USCIS. That the Attorney... that for any of these powers that have been transferred out, when you read a term like Attorney General, in the INA, it means to refer to whoever those powers were, in this instance, the authority of INS were taken out to. So, if we were to look at this statute, if we were to look at this case in 2002, and what the Attorney General had done with the U visa, had given all authority to INS to adjudicate the waiver, we wouldn't be here. The only reason we are here is because in 2003, those INS functions were transferred out to USCIS. So, can we go back to Kahn, which is where this started? Yes, let's go back to Kahn. Maybe I'm missing... does Kahn talk about those statutes? No, Kahn does not talk about those ambiguities. This Court does not... this isn't a Chenery issue. This is a matter of the clear language. This Court can determine the clear language on its own. Go ahead. Was any argument based on those statutes made in LDG? They're not cited in LDG. I don't think so. No, Your Honor. I believe that... and I would have to go back and see what was briefed in those cases, in LDG. Basically, you're now saying that LDG was incorrectly decided for a reason that the government never argued in LDG and that the Board didn't mention in Kahn. That's not a very good way to try to attack a precedent of the circuit. What I saw in Kahn seems to be an argument that this authority under D3 for U visas is limited to the port of entry. That is correct, Your Honor. And yet, you all are endorsing in your brief the DHS regulations that say we get to decide U visas for people who are already in the United States under D3. Right? That is correct. That seems inconsistent to me. Historically, it has been at the port of entry, but the statute itself insofar as it discusses admission would seem to indicate that you can obtain the waiver if you're seeking admission through say, for example, a U visa. Sure, but we also have the widespread practice it may not be universal, but the widespread practice in both DOJ regulations and DHS regulations of saying when statutes are talking about admission, it also applies to efforts within the United States to change your status. Like to get a U visa, right? Or to determine whether you can get a waiver of inadmissibility for such a visa. Your arguments seem tailored to affirm this judgment, but seem inconsistent with an awful lot of other positions the government is taking. What I think I'm attempting to do there is a T visa regulation out there where the Attorney General, and it was originally promulgated I believe in 2002, where the Attorney General expressly provided for the D3 waiver, and a T visa is a visa that you get in the United States. So at some point the Attorney General in its regulations indicated that there is going to be opportunity, and those regulations allowed you to seek the waiver before INS, not before an immigration judge. So at some point the Attorney General and those regulations are still out there, they're still in the statute. The regulation is at let's see 6 CFR 1212.16. So in so far as the regulations and I guess what, prior delegations that would indicate that INS and now USCIS could adjudicate that waiver outside of someone being at the port of entry, that ship seems to have sailed. The Attorney General seems to have already spoken to it back in 2010. And DHS has spoken to it regarding U visas, correct? And DHS has spoken to it with  I mean it in what regard does that, is there a difficulty? Because Kahn seems to be saying that the ambiguity we're going to find in the statute, D3, is whether this determination of a waiver of inadmissibility can happen anywhere other than at the time and point of admission to the board. And the rest of the government is saying yes it can and Kahn is saying no it can't. It's saying that in the context, it's I don't believe that the board is necessarily saying that it can happen somewhere other than that it can't happen somewhere other than at the point of admissibility. It's arguing there's a statutory ambiguity, right? It is arguing that there is a statutory ambiguity. That's its hook for disagreeing with LDG. And yet the ambiguity has been interpreted differently by the government in several other respects. For example, in the DHS regulations saying yes we can adjudicate, we can decide waivers of inadmissibility for U visas under D3 for people who are not at the port of entry anymore, who are in the United States, right? Yes. So does the statute mean something different for the Department of Homeland Security than it does for the Department of Justice? No, Your Honor. It is not. Just because USCIS can adjudicate that waiver, it does not entail that the immigration judge can or should be doing so. It seems to me that... Focus on the specific ambiguity that you're relying upon, which is about admission. I don't think the... I think the specific ambiguity with regard to admission at the very least has been construed, and I don't think the Board necessarily said the specific ambiguity with regard to admission is the thing that necessarily foreclosed their ability to review it. It's that that's the way the regulations have delegated to the immigration judge separately from how it's been delegated to USCIS, and that it's easier to have those things. The district director will be, DHS is a DHS employee, and that who it gets delegated to, to determine, to best determine when it is, what, when the waiver should be granted at the point of admission is something that is appropriate for the Attorney General and for the Board to determine who has the authority over. Mr. Tennyson, we understand you're not personally responsible for the confusion in the regulations. Thank you, Your Honor. Thank you, Mr. Tennyson. Anything further, Mr. Roth? You're not Mr. Roth. You can stand up if you want. If you want to switch sides, you and Mr. Roth can negotiate, and then let me know what you want to do. To Your Honor's point, the weird thing, the Board says the statute's ambiguous, but then it doesn't construe the statute. They talk about Brand X. Brand X turns on Chevron. If there's no agency construal of an ambiguous statute, Chevron drops out. That's the reason why the government didn't brief Brand X as much as it probably would have otherwise, because basically their point is that they interpret the regulations, the statute is ambiguous, and then they try to use the regulations to avoid the statutory question. But that doesn't make any sense. If you say that currently, as of today, the Attorney General can grant a D-3 waiver in the U-Visa context, but then you've tied the hands that the Attorney General uses to do that. The Attorney General doesn't act in his office in Washington. He acts through immigration judges, and so it doesn't make any sense whatsoever. And through district directors. Well, no, not anymore. No. District directors, as the government points out, are employed by the DHS. The Board assumes, under this argument, that right now, it's not just the Secretary of DHS who has D-3 authority, but it's the Attorney General. And it doesn't make sense to construe those regulations to create a conflict with the statute. That's what you said in Mocenaro. The Board, at a minimum, needs to factor in. It's not the Board's fault. The Board can't issue regulations. It's not the Board's fault that no one has issued, that these 1964 regulations haven't been updated, but they, at the same time, can't act as if these regulations are going to construe a later enacted statute. As if the drafters of those regulations could, through omissions, foresee what's going on in the future. I haven't had a chance to talk about the reasonableness of the Board's decision, a matter of kind. We've tried to explain it in various ways, why we think it's unreasonable for the Board to reason from silence in this context. The Board also makes several policy arguments, efficiency arguments. My client remains detained. This month will be three years in immigration detention. The Board has a decision matter of Sanchez-Sosa that says, people like my client can just ask for a continuance. Just hold on, wait on your immigration proceedings, and let DHS do its job first. And then I see my time's up. I don't see how... Your time is not up. That red one came on. Two minutes. When that red one goes on over there, you're gone. If that's efficiency, it's efficiency only by treating as external all costs to people other than the Board. My client, his family, even the government's detention purse are impacted when a person sits around waiting for an adjudication. The immigration judge, the LDG decision, the wisdom of LDG is illustrated by what happened here. This is the kind of complicated question that an immigration judge is well-situated to handle. Our immigration court system, for all its flaws, has live testimony, has cross-examination. This is the first time I've heard you praise immigration judges. This is quite a change. The alternative is that bad, Your Honor. It's not the only time I've praised them. But the alternative is adjudication on a paper record by a remote service processing center in Vermont, which is trying to adjudicate rehabilitation and credibility, and they're just not well-situated to do that. Thank you, Mr. Roth. The case is taken under advisement. And you can count on your praise of immigration judges appearing in a future court opinion.